**FIN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Felipe N. Gomez, | ) | Case No. 23 B 3023 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| Felipe N. Gomez, | ) | |
| Plaintiff, | ) | Adversary No. 24 A 00152 |
| | ) | |
| v. | ) | |
| | ) | Honorable Michael B. Slade |
| Frank J. Kokoszka, as Chapter 7 Trustee, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION GRANTING DEFENDANT FRANK KOKOSZKA'S
MOTION FOR SUMMARY JUDGMENT (DKT NOS. 91-92)**

Felipe Gomez filed for relief under chapter 7 of the Bankruptcy Code on March 7, 2023. *See* Case No. 23 B 3023, Dkt. No. 1. On June 10, 2024, he initiated this Adversary Proceeding; the defendant, Chapter 7 Trustee Frank Kokoszka (the "Trustee"), later filed a counterclaim. This Adversary Proceeding asks me to decide whether two lawsuits filed by Gomez post-petition are property of the estate pursuant to 11 U.S.C. § 541. Because, based on the undisputed material facts for which evidence exists in the summary judgment record, they are estate property, I am granting summary judgment in favor of the Trustee on both Gomez's affirmative claim (related to the so-called "Extended Stay Litigation") and the Trustee's counterclaim (related to the so-called "Weisenthal Litigation"). Both pieces of litigation are property of the bankruptcy estate.

1

I.

Following the timely filing of an appropriate motion, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (providing that Rule 56 applies in adversary proceedings, "except that any motion for summary judgment must be made at least 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise.") A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Donald v. Wexford Health Sources, Inc.,* 982 F.3d 451, 457 (7th Cir. 2020) (citations omitted). In evaluating the motion, I "construe all facts and inferences therefrom in favor of the party [here Gomez] against whom the motion under consideration is made." *United Air Lines, Inc. v. HSBC Bank USA (In re United Air Lines, Inc.)*, 453 F.3d 463, 468 (7th Cir. 2006) (internal quotations omitted).

Section 541 of the Bankruptcy Code provides that the bankruptcy estate consists of, except for statutory exceptions not applicable here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition is intentionally "broad," *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 (1983), and "virtually all property of the debtor" becomes property of the bankruptcy estate on the petition date. *In re Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993). Claims and causes of action belonging to the debtor are included. *Whiting Pools,* 462 U.S. at 205 n. 9; *see also Polis v. Getaways, Inc. (In re Polis),* 217 F.3d 899, 901 (7th Cir. 2000); *In re Geise*, 992 F.2d 651, 655 (7th Cir. 1993) ("The scope of section 541 is broad and includes causes of action.")

2

The key question here is *when* a particular cause of action that the debtor seeks to advance arose. If "the legal claim on which the suit was based, . . . [arose] out of a transaction . . . that had occurred before the petition was filed, [it] was already 'property' of the debtor and hence the debtor's estate in bankruptcy." *Polis*, 217 F.3d at 902. That fact determines whether a claim is part of an estate and in the trustee's sole purview to pursue or the debtor's property to pursue at his discretion. My predecessor described this well in a prior case:

> Property interests belonging to a chapter 7 debtor when the petition is filed are part of the estate to be administered by the trustee. Subject to exceptions specified in section 541, however, property a debtor acquires post-petition belongs to the debtor.
>
> This is as true for causes of action as it is for cars or televisions. A cause of action that has accrued as of the commencement of the case is estate property; only the trustee may pursue it. A cause of action that accrues only after the case is commenced, on the other hand, is the debtor's to pursue for his own benefit. Put simply, pre-petition causes of action are part of the bankruptcy estate and post-petition causes of action are not.

*Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229, 235 (Bankr. N.D. Ill. 2005) (internal quotations and citations omitted).

So-called "continuing conduct" cases can present complications—what if some of the conduct challenged is pre-petition and some is post-petition? As the Seventh Circuit has described, "[a]llocating assets and liabilities to the correct side of the pre- and post-petition line is usually a straightforward task, but occasionally the job becomes challenging." *In re Meyers*, 616 F.3d 626, 627 (7th Cir. 2010). The "rule" in cases that straddle the petition date--to the extent this can be called a rule--is that property of the estate includes "property that is 'sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start.'" *Id.* at 628 (quoting *Segal v. Rochelle,* 382 U.S. 375, 380 (1966) and the legislative history of § 541).

3

The Trustee's motion for summary judgment refers me to *Bercy v. City of Phoenix*, 103 F.4th 591 (9th Cir. 2024).  The Trustee contends that *Bercy* closely parallels the facts here and holds that: (a) a debtor's claim is property of the estate if it is based on a course of conduct that began pre-petition and continued post-petition; and (b) the debtor does not get damages even for the post-petition conduct.

*Bercy* is somewhat helpful but not on point.  It is a hostile work environment case.  Bercy was a city employee.  She was aware of all the elements of her hostile work environment claim prior to the petition date and, in fact, alleged that one of the reasons she filed for bankruptcy "was to escape her coworker's ongoing harassment." *Id.* at 595.  While her claim also alleged post-petition misconduct, the statute creating her claim, Title VII, "does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing *and liability.*" *Id.* (emphasis in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).  Relying on the "proceeds" addition to property of the estate provided in 11 U.S.C. § 541(a)(6), the court found that any post-petition part of the claim was estate property because it was "sufficiently rooted in the prebankruptcy past." *Id.* (quoting, among other cases, *Segal*, 382 U.S. at 380).  The Ninth Circuit then offered a policy rationale for its view:

> It would unfairly "doubly advantage" a debtor like Bercy to allow her to personally recover damages for conduct that occurred after she filed for bankruptcy when that conduct forms part of a single claim she could have brought before she filed for bankruptcy.  First, she would receive the advantage of a "fresh start" by discharging her debts.  But she receives that discharge only after placing her property in the bankruptcy estate.  Second, she would still retain the ability to recover, in part, on the accrued claim.  But that claim was part of the estate she put into bankruptcy so that she could discharge her debts. Bercy's fresh start—the discharge of her debts—is made possible because her property, including her entire claim, forms a bankruptcy estate out of which creditors may be paid.

*Id.* at 596–97.

The lesson of *Bercy* is consistent with what the Seventh Circuit held in *Meyers* and what other courts have confirmed:  the question I need to answer is when the claim(s) sought to be advanced by the debtor *accrued*.  If a claim *accrued* pre-petition, then it belongs to the estate, but if it did not, it belongs to the debtor.  *See, e.g., Holstein*, 321 B.R. at 237 ("Because Holstein sustained the injury after his petition was filed, the resulting cause of action was not an interest he held as of the commencement of the case.") (internal quotations omitted).  And "[f]or the purpose of § 541 of the Bankruptcy Code, a claim or cause of action has accrued when all of the elements of the cause of action had occurred as of the time the bankruptcy case was commenced, so that the claim is sufficiently rooted in the debtor's prebankruptcy past." *Putzier v. Ace Hardware Corp.,* 50 F. Supp. 3d 964, 982 (N.D. Ill. 2014) (citing, among other cases, *Segal,* 382 U.S. at 380) (internal quotation omitted).

## II.

The two lawsuits at issue in this Adversary Proceeding are quite different, so I will walk through them in turn.  I'll start with the Weisenthal Litigation described in the Trustee's counterclaim because the answer there is easier.

On May 8, 2024, Gomez filed an "Adversary Complaint for the Retrieval of Estate and other Related Personal Property, and Interpleader/Declaratory Relief."  Adv. No. 24 A 116, Dkt. No. 1 (the "Weisenthal Complaint").  Gomez characterized his complaint as seeking relief under "11 USC 541/542 (Replevin of Estate and Debtor Property)," "18 U.S.C. Ch. 83, 1701-02," "22 USC 2201 (Declaratory Judgment Act)" and "FRCP 22 Interpleader."  *Id.* at 1.  Gomez asked that the Weisenthal Trust be ordered disclose information, turn over to him certain property, "pay compensatory and punitive damages of at least $100,000 to [Gomez], and no one else," and "indemnify" Gomez for potential liability to third parties.  *Id.* at 3.

5

In his Complaint, Gomez claimed entitlement to mail for an account at Charles Schwab & Co. and to "paper files, including HIPPA and Privacy Act protected medical records." *Id.* at 2. Gomez alleged that "[o]n information and belief, the missing personal property includes records that have indicia of a large debt (six to seven figures) owed from Larry Wiesenthal to the Weisenthal, which in turn part of which, Gomez per stirpes share [sic], could possibly be part of the bankruptcy estate." *Id.*

There is no dispute that the claims advanced in Gomez's Weisenthal Complaint concern conduct prior to the March 7, 2023 petition date, and any related claims would have accrued years earlier. In fact, Gomez contends in the Weisenthal Complaint that the alleged wrongs occurred between July 4, 2011 and November 11, 2019, *see* Adv. Pro. No. 24 A 116, Dkt. No. 1, at 1-3. Any claims arising from that conduct would have accrued back then. For that very reason, I granted the Weisenthal Trust's motion to dismiss the Weisenthal Complaint. *See Gomez v. The Living Trust of Sandra Weisenthal Gomez (In re Gomez)*, No. 23 B 3023, 24 A 00116, 2025 WL 310881, at *1 (Bankr. N.D. Ill. Jan. 27, 2025) ("There is no dispute that the claims advanced here concern conduct that occurred prior to the March 7, 2023 petition date. While this Adversary Proceeding was filed later, the legal claim on which the suit was based, having arisen out of a transaction ... that had occurred before the petition was filed, was already 'property' of the debtor and hence the debtor's estate in bankruptcy.") (quoting *Polis*, 217 F.3d at 902). Having reviewed Gomez's opposition to the Trustee's motion for summary judgment, I see no reason to change my view. Summary judgment on the Trustee's counterclaim is granted in the Trustee's favor for the same reasons that I dismissed Gomez's adversary proceeding in January: because all of the claims advanced in the adversary proceeding accrued pre-petition, the proceeding belongs to the Trustee, not Gomez. *See id.* at *1-3.

III.

The Extended Stay Litigation requires more analysis.  On February 28, 2024, Gomez

commenced the Extended Stay Litigation by filing a complaint in the Circuit Court of DuPage

County, Illinois, in Case No. 2024 MR 123 (the "DuPage Complaint").[1]  The defendants are

Extended Stay America ("ESA"), its alleged owners Blackstone Group, Inc. and Starwood

Capital Group, and four ESA employees.

Gomez accurately characterizes this case as a landlord-tenant dispute, as he had been a

"long term guest" at an ESA property in Lombard.  (DuPage Compl. ¶ 2).  He complains that,

even though he had "repeatedly complained of illegal activity" on the premises, he was told to

keep quiet "under threat of ejectment."  (*Id.*)  He claims that the defendants violated contractual

and common law duties to "assure safe conditions at the subject hotel" by, among other things,

allowing a cash skimming scam and prostitution to occur, allowing migrants to create unsanitary

conditions that led to a "cockroach infestation" after which ESA supposedly "eject[ed] the

migrants while keeping the cash," failing to address a series of issues with the facility on a

"punch list" Gomez provided to ESA, and "failing to have adequate Fire Protection . . . where

there have been dozens of false alarms at all hours of the day and night."  (*Id.* ¶ 8)

The first paragraph of Gomez's original Du Page Complaint stated as follows:

> This is an action for breach of contract, breach of innkeeper's duty, maintenance
> of a nuisance, respondeat superior, and violation of 775 ILCS 5/ et seq. (Human
> Rights Act), as wells as potential fraudulent misrepresentation and other torts and
> breaches as to [Gomez], ***occurring on a continuing basis at Extended Stay
> America*** Chicago – Lombard – Oak Brook.  2701 Technology Drive, Lombard,
> IL, ***over the past 2+ years*.. (*Id.* ¶ 1, emphasis added, typos in original)

---

[1] The DuPage Complaint was attached to this Adversary Complaint (Dkt. No. 1) as Attachment A.  In response to the
Trustee's summary judgment motion, Gomez challenges the authenticity of the version of the DuPage Complaint
attached to the Trustee's motion.  (*See* Docket No. 162, Gomez Objections to Trustee's Statement of Undisputed
Facts, at 7)  While any discrepancies are not apparent, Gomez himself alleges that he filed the copy of the DuPage
Complaint attached to his Adversary Complaint. (Dkt. No. 1 ¶ 2).  The allegation is binding at summary judgment,
*see Specht v. Google, Inc.*, 747 F.3d 929, 933 (7th Cir. 2014), so I will consider that copy as undisputed.  *See
Grochocinski v. Rieger (In re KJK Constr. Co., Inc)*., 414 B.R. 416, 430-31 (Bankr. N.D. Ill. 2009)

Because Gomez had alleged affirmatively that the factual basis for his suit began in 2022 (before his bankruptcy was filed), the Trustee took the position that the suit was owned by the estate. The Trustee's position triggered a series of disputes between the Trustee and Gomez.

Gomez first filed a motion in Du Page County to join the Trustee and his law firm as a party to his lawsuit.  In response, the Trustee filed a motion in Gomez's bankruptcy case asking that Gomez be barred from filings "in any courts," including DuPage County, that were in "violation of the *Barton* Doctrine."  (Case No. 23-3023, Docket No. 300 at 1)[2]  The Trustee alleged that Gomez violated *Barton* by trying to add the Trustee as a party to the DuPage suit without the prior approval of the Bankruptcy Court and through actions in several other cases. At the hearing on that motion, my predecessor advised that, on the merits, "Mr. Kokoszka is right.  You cannot sue Mr. Kokoszka in connection with actions that he takes as trustee without permission of the bankruptcy court."  (*Id.*, Dkt. No. 316 at 4:1-3)  But my predecessor declined to issue an injunction against Gomez because such relief must be sought by adversary proceeding and meet Rule 65 standards.  (*Id.* at 2:12-20, referring to Fed. R. Bankr. P. 7001(7) and 7065)

Gomez followed with a "Motion to Determine Validity/Extent of Kokoszka Interest In, If Any, and Applicability of Barton Doctrine to Post-Petition Landlord-Tenant Matter Gomez et al., v. Blackstone et al." (*Id.* Dkt. No. 320)  In that motion, Gomez asked that my predecessor deem the Extended Stay Litigation "outside the bankruptcy, beyond the purview and authority of the UST or Kokoska [sic]," declare the *Barton* doctrine inapplicable "as to the UST and Kokoska's [sic] conduct and liability related to their attempts to control and interefe [sic] with Gomez's and Co-Plaintiff's private property," and require the U.S. Trustee or Kokoszka to seek leave of court before "attempting to interfere with any of Gomez's claims or cases."  (*Id.* at p. 1, ¶¶ (A)-(D))

---

[2] *Barton v. Barbour*, 104 U.S. 126, 128 (1881) (receiver cannot be sued without leave of the court that appointed him); *see also In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) (applying *Barton* rule to a bankruptcy trustee).

Gomez asserted that "the matter 24MR123 is outside the bankruptcy" and that his "amended complaint makes provision for any recovery that may be earmarked as pre-petition." (*Id.* ¶ 7) My predecessor denied Gomez's motion "without prejudice to Gomez's filing an adversary proceeding naming the trustee (and only the trustee) as the defendant and requesting a declaratory judgment (and only a declaratory judgment) that the so-called "landlord-tenant" matter is not property of the bankruptcy estate." (*Id.* Dkt. No. 323)

This Adversary Complaint followed. When asked in the *pro se* cover sheet to describe the property subject to his claim, Gomez stated "See Attachment A." (Adv. Pro. Dkt. No. 1, at 2) And when asked "How and when did you come to own the property" at issue in the complaint, Gomez also answered "See Attachment A." (*Id.*) "Attachment A" was Gomez's initial Du Page Complaint, which (again) explicitly said in its first paragraph that "[t]his is an action for breach of contract, breach of innkeeper's duty, maintenance of a nuisance, respondeat superior, and violation of 775 ILCS 5/ et seq. (Human Rights Act), as wells as potential fraudulent misrepresentation and other torts and breaches as to Plaintiff, ***occurring on a continuing basis*** at Extended Stay America Chicago – Lombard – Oak Brook. 2701 Technology Drive, Lombard, IL, ***over the past 2+ years***.." (DuPage Compl. ¶ 1, emphasis added, typos in original).

Gomez's Adversary Complaint attempted to characterize the Extended Stay Litigation as a "post-petition Stalking, Landlord-Tenant, state law, equitable matter," *see* Dkt. No. 1, PDF page 8,[3] ¶ 9(A), but at the same time appeared to recognize it as a "straddle" case. Indeed, Gomez affirmatively alleged that his "amended complaint makes provision for any recovery that may be earmarked as pre-petition," *id.* at PDF page 8 ¶ 7, a binding admission on summary judgment. *See Specht*, 747 F.3d at 933.

---

[3] Many of Gomez's filings do not have page numbers so, for ease of reference, I am providing the PDF page numbers for those reviewing docket filings electronically.

The Trustee relies exclusively on the Du Page Complaint to seek summary judgment.  He argues that "[s]ince the *pro se* Complaint was filed on February 28, 2024, the alleged wrongs started on a continuing basis on or about February 27, 2022, **prior** to the March 7, 2023, Petition Date, or prepetition.  Therefore, the Trustee asserts that, as a matter of law, the cause of the action in the Extended Stay Litigation constitutes Property of the Bankruptcy Estate." (Dkt. No. 92, Mem. of Law in Support of Trustee's Mot. for Summ. Judg., at 2, emphasis in original) Gomez makes a series of arguments in opposition, but they are without merit.

First, Gomez complains about alleged procedural irregularities in the Trustee's motion and supporting materials, arguing that he did not sufficiently support certain statements with citations.  (Dkt. No. 104, Gomez Oppo. to Summ. Judg., ¶¶ 1-11).  These arguments are not persuasive.  I understood the Trustee's short motion and had no trouble with the attachment.  The germane points were supported by record cites.  But even if they were not, the rule states that a failure to strictly comply "may" (not must) result in denial of the motion, and I see no reason to deny the Trustee's motion on procedural grounds.  The Rule is clear that even "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," I may "grant summary judgment if the motion and supporting materials . . . show the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).  I believe the Trustee is so entitled and am not rejecting his motion on procedural grounds.

Second, Gomez challenges the Trustee's reliance on the initial complaint filed in the Extended Stay Litigation (and attached to his Adversary Complaint).  (*Id.* at ¶¶ 12-28) Gomez claims, and includes evidence to show, that he has amended that complaint twice since. and he argues that the initial complaint is a "nullity" that I cannot accept as evidence.  Gomez does not, however, attach either amended complaint to his papers, and I disagree with his view.

10

Making an allegation in a complaint is a serious thing and cannot easily be wiped away by filing an amended complaint that omits it.  As the Seventh Circuit makes clear:

> An allegation in a complaint is a judicial admission that can be used against the plaintiff.  *See Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001) ("It is a 'well-settled rule that a party is bound by what it states in its pleadings.' " (quoting *Soo Line R.R. v. St. Louis Sw. Ry.*, 125 F.3d 481, 483 (7th Cir. 1997)));  *Whitlock v. Brown*, 596 F.3d 406, 412 (7th Cir. 2010) ("A judicial admission trumps evidence." (quoting *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996)).

*Moran v. Calumet City*, 54 F.4th 483, 494 (7th Cir. 2022).  Since here we have an admission made in a separate lawsuit (the DuPage Complaint) rather than this one, perhaps it is not "conclusive," *see, e.g., Grant Importing & Distrib. Co. v. Amtec Int'l of N.Y. Corp.*, No. 09 cv 6118, 2010 WL 706042, at *3 (N.D. Ill. Feb. 24, 2010), but it at a minimum is *evidence* that must be countered to qualify as "disputed" and defeat a summary judgment motion.[4]

---

[4] Illinois state law is no different.  Gomez cites several cases for the proposition that an amended complaint supersedes an original complaint.  Specifically, in *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill.2d 150, 152-53, 449 N.E.2d 125, 126 (1983), a plaintiff saw several counts of its complaint dismissed without prejudice, filed and pursued an amended complaint that did not include them, and later tried to appeal the dismissal of the abandoned counts.  The court held that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints."  *Id*.  And the same scenario played out in *Bowman v. Lake Cnty.,* 29 Ill.2d 268, 272, 193 N.E.2d 833, 835 (1963), where a plaintiff sought appellate review of claims he had abandoned when filing an amended complaint.  *Id*. ("while plaintiff now seeks review of both orders of dismissal, our consideration of the first order may be at once eliminated from the appeal. Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn").  This line of authority does not alter the reality that, when a plaintiff makes a factual statement in a complaint, the statement is evidence (if not an admission) that can be used against him.  *See, e.g., Baker v. Daniel S. Berger, Ltd.,* 323 Ill. App. 3d 956, 963, 753 N.E.2d 463, 470 (1st Dist. 2001) ("Allegations contained in a complaint are judicial admissions and are conclusive against the pleader") (quoting *Calloway v. Allstate Ins. Co.,* 138 Ill. App. 3d 545, 549, 485 N.E.2d 124, 1245 (1985)); *Roti v. Roti*, 364 Ill. App. 3d 191, 200, 845 N.E.2d 892, 899–900 (1st Dist. 2006) (finding allegation in original complaint binding despite amendment and affirming that trial court "effectively treated the allegations of the original complaint as judicial admissions that [plaintiff] could not contradict in later pleadings); *Associated Claims Serv., Inc. v. Rinella & Rinella*, 79 Ill. App. 3d 1023, 1026, 398 N.E.2d 1211, 1213 (1st Dist. 1979) (relying on "a judicial admission by Rinella in its third party complaint which conclusively settles this point").  As one of our district judges described, "a superseded complaint does not disappear into the ether, never to be seen again. An amended pleading does not operate as a 'judicial tabula rasa. A party can rely on the other party's pleadings as statements of a party opponent, so superseded complaints are fair game at trial. An earlier pleading may come back to bite a plaintiff at trial, because the admission does not disappear. Admissions are forever." *Laslie v. Cicero*, No. 20-CV-1831, 2021 WL 1853250, at *10 (N.D. Ill. May 10, 2021) (citing *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048 (7th Cir. 2019)).

11

Frankly, since Gomez attached the DuPage Complaint to his Adversary Complaint here, and affirmatively asked this Court to find the DuPage Complaint to be outside the bankruptcy estate, paragraph 1 of Gomez's original DuPage Complaint likely was a "judicial admission" rather than merely "evidence" against him.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")  But I still may have denied summary judgment if Gomez had provided any contrary evidence to put the matter in genuine dispute.

Here, Gomez filed several documents in opposition to the Trustee's motion for summary judgment: a memorandum of law (Dkt. No. 104), an affidavit (Dkt. No. 103), and an opposition to the statement of undisputed material facts filed by the Trustee (Dkt. No. 102).  Gomez's opposition to the Trustee's statement of undisputed material facts does purport to dispute what he had said in his DuPage Complaint about when the conduct creating his claims occurred.  (*See* Dkt. No. 102, Gomez Oppo. to Statement of Facts, ¶¶ 9-10 ("Gomez denies that any cause of action, other than for wear and tear, accrued prior to 3.7.23. . ..")  But that isn't evidence.[5]  And Gomez's Affidavit submitted in opposition to summary judgment (Docket No. 103) (which is evidence) contains none of these assertions.[6]  The bottom line is that Gomez has not provided

---

[5] Similarly, Gomez contends in his opposition to the Trustee's statement of facts that two ESA employees whose conduct is challenged in the DuPage Complaint did not even work at ESA until after the bankruptcy was filed.  (*Id.* at 26-27)  But a denial in an opposition to a movant's statement of facts is not *evidence*, and Gomez's affidavit (which could be evidence) does not contain any of these assertions.  *Li v. Fresenius Kabi USA, LLC,* 110 F.4th  988, 995 (7th Cir. 2024) ("a response to a [statement of facts] is not, on its own, admissible evidence").  The Seventh Circuit often states that "summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (internal quotations omitted).  The time for Gomez to offer sworn testimony (or other evidence) that would substantively counter what he affirmatively stated in his DuPage Complaint was as part of his summary judgment filings.  He offered none.

[6] The "punch list" Gomez claims to support his contention that the cause of action arose postpetition does have a date of August 23, 2023, which is post-petition.  But all that establishes is that part of the conduct forming the basis of his claim was post-petition, something no one disputes.  The question is when Gomez's claims "accrued," and the reference to the punch list cannot overcome an affirmative statement of when the challenged misconduct *began*.

12

any *evidence* to dispute what he said in Paragraph 1 of the DuPage Complaint – that his complaint challenged a course of conduct that occurred "on a continuing basis" "over the past 2+ years," *see* Dkt. No. 1, Complaint, Attachment ¶ 1, most of which pre-dated the petition date.

Third, in his opposition to the Trustee's statement of material facts, Gomez makes one additional argument that he contends should defeat summary judgment. Specifically, Gomez asserts that the Trustee is taking contradictory positions because, when the Extended Stay Litigation was removed to federal court, the Trustee argued (correctly) that the bankruptcy court lacked jurisdiction over it. (Dkt. No. 102, Gomez Opp. To Stmt. of Undisputed Facts, ¶¶ 2-3; Dkt. No. 103, Ex. A, Gomez Aff., at 9-13 (Trustee Motion to Remand), Ex. B (Order of Remand)). Gomez characterizes this as an admission that the litigation is outside the bankruptcy case and argues that my predecessor's decision to remand the case to state court is res judicata. Not so. Bankruptcy jurisdiction is statutory and limited; bankruptcy estates often own pre-petition causes of action (like these) that must be pursued, if at all, in state court.

Instead, as described earlier in this opinion, I need to evaluate whether the cause(s) of action that Gomez attempted to plead in his DuPage Complaint[7] *accrued* prior to March 7, 2023, and there is no genuine issue that they did:

- "***Breach of Contract***." Neither Gomez nor the Trustee points me to the "contract" allegedly breached here. That said, since Gomez admits that his residence at ESA pre-dated this bankruptcy, and he alleges that the breaches occurred "on a continuing basis at Extended Stay America Chicago – Lombard – Oak Brook . . . . over the past 2+ years" (Dkt. No. 1, Complaint, at Attachment, ¶ 1), it hard to see how this claim would not have

---

[7] These are the claims listed in paragraph 1 of the DuPage Complaint: Gomez pleaded that "This is an action for breach of contract, breach of innkeeper's duty, maintenance of a nuisance, respondeat superior, and violation of 775 5/ et seq. (Human Rights Act), as well as potential fraudulent misrepresentation and other torts and breaches as to Plaintiff . . .." Three items of note. First, "respondeat superior" is not a claim, but a doctrine of liability – for example, if I slipped in a grocery store because a store employee left a banana peel on the floor, I would sue the store for negligence on a theory of respondeat superior, which stands for the principle that an employer is responsible for the acts of its employees in the ordinary course of employment. Second, I am not evaluating what Gomez identified in his complaint as "potential" additional claims. It is possible that Gomez has claims against Extended Stay that are not yet pled and are entirely post-petition. The only question before me is whether the claims actually pled in the Du Page Complaint accrued post-petition. They did not.

accrued pre-petition. Gomez simply alleges that the "conduct and failures of ESA and its employee defendants have breached the contract and duty ESA has to [Gomez] to provide safe, secure, clean, and harassment free lodgings, resulting in proximate harm to [Gomez], including diminution of [the] value of the contract price paid, mental pain and suffering, fear and related consequential and direct damages." (*Id.* ¶ 11) Under Illinois law, "[f]or contract actions and torts arising out of contractual relationships, the cause of action ordinarily accrues at the time of the breach of contract, not when a party sustains damages." *Indiana Ins. Co. v. Machon & Machon, Inc.,* 324 Ill. App. 3d 300, 303, 753 N.E.2d 442, 445 (1st Dist. 2001). Gomez does not specify when he believes this first occurred, but his Complaint states, because his residence at ESA began long before the Petition Date, that this claim first accrued long before the Petition Date.

- "***Breach of Innkeeper's Duty***." While my research revealed limited precedent for this claim (and the parties' briefs identified none), it appears to be a form of a negligence claim. "The innkeeper-guest relationship imposes on an innkeeper a duty to exercise 'ordinary' care in protecting its guests from injury, and does not impose a 'heightened' duty to protect guests generally from danger." *Schmid v. Fairmont Hotel Co.-Chicago*, 345 Ill. App. 3d 475, 484, 803 N.E.2d 166, 173 (1st Dist. 2003). And in Illinois, a negligence claim accrues when a plaintiff should discover *some* injury, even if the injuries get worse later. *See Am. Fam. Mut. Ins. Co. v. Krop*, 120 N.E.3d 982, 992 (Ill. 2018) ("The cause of action accrues as soon as the plaintiff should discover some injury, even if the full extent of the injury is not evident."). Thus, for the same reasons stated above, it is hard to see how negligence alleged to have been occurring "on a continuing basis" for "the past 2+ years" preceding April 2024 would somehow have first accrued *after* March 7, 2023.

- "***Maintenance of a Nuisance***." Nuisance claims are more common, but they accrue at the same time: when a plaintiff knows or should know of the *first act* creating the alleged nuisance. *See, e.g., Powell v. City of Danville,* 253 Ill. App. 3d 667, 670, 625 N.E.2d 830 (4th Dist 1993). Here, again, based on what the original Du Page Complaint actually said, it appears that Gomez's nuisance claim – perhaps not with certain of the facts alleged in the Complaint that had not occurred yet, but a claim nonetheless – had *accrued* pre-petition.

- "***Violation of 775 ILCS 5/__ et seq. (Human Rights Act)***." The Illinois Human Rights Act ("IHRA") makes it illegal to, "on the basis of unlawful discrimination, . . . [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A). Gomez's Du Page Complaint does not segregate any of his factual allegations to particular claims, simply alleging in cursory fashion that he "alleges the conduct and failures amount to violations of the Human Rights Act" (Dkt. No. 1, Compl., at Attachment ¶ 12) As with the other claims, since this allegedly "occur[ed] on a continuing basis" at ESA "over the past 2+ years" prior to February 2024 (*id.* ¶ 1), it is hard to see how any IHRA claim (to the extent any such claim exists) would have accrued later than March 2023.

14

The bottom line is that although some facts pled in the DuPage Complaint could not have been alleged prior to March 2023 (because they had not yet occurred), according to the allegations in the complaint itself, each of the *claims* could have been pled prior to the petition date.  On this summary judgment record, applying the applicable law dividing what is and is not property of the estate, there is no genuine of issue of material fact that the Extended Stay Litigation is property of the estate.

IV.

For the reasons stated here, the Trustee is entitled to judgment as a matter of law as to both the claims in Gomez's Adversary Complaint and the Trustee's counterclaim.  Thus, the Trustee's motion for summary judgment will be granted.  A separate order will issue.

Signed:   May 21, 2025                    By:   _____

MICHAEL B. SLADE
UNITED STATES BANKRUPTCY JUDGE